In re DANIEL.

(Supreme Court, Appellate Division, Second Department.  March 18, 1912.)

1. ELECTIONS (§ 120*)—"CONVENTION"—WHAT CONSTITUTES.
     In view of Laws 1911, c. 891, defining a "convention," as used therein, as an assemblage of delegates elected according to the provisions of the chapter and representing a political party duly convened to nominate candidates for public office, etc., or for the transaction of any other business relating to the affairs of the party, section 112 of the chapter, relating to the organization of conventions, would not apply to the meeting of a party congressional committee appointed before the statute was enacted.

     [Ed. Note.—For other cases, see Elections, Dec. Dig. § 120.*
     For other definitions, see Words and Phrases, vol. 2, pp. 1559, 1560; vol. 8, p. 7617.]

2. ELECTIONS (§ 132*)—COMMITTEES—USE OF PROXIES.
     Under Laws 1911. c. 891, § 38, providing that, until the adoption of rules and regulations by a party committee, the rules and regulations of the existing committee, so far as consistent with the chapter, shall continue to be those of the party for that political subdivision, a rule of a congressional committee appointed before the enactment of the statute, and continuing in existence, making proxies given by its members valid, would apply to validate proxies given while the committee was void.

     [Ed. Note.—For other cases, see Elections, Cent. Dig. § 119; Dec. Dig. § 132.*]·

Appeal from Special Term, Orange County.

In the matter of the petition of Hugh A. Daniel to review the proceedings of the Congressional Committee of the Twenty-Sixth Congressional District of the State of New York.  From an adverse order sustaining the proceedings, petitioner appeals.  Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Graham Witschief, for appellant.
William F. Cassedy, for respondent.

RICH, J.  This proceeding was instituted to review the proceedings of the Republican congressional committee of the Twenty-Sixth congressional district in designating persons to be voted for as delegates to the Republican National Convention.  It appears that the congressional committee, whose proceeding is attacked, was appointed prior to the enactment of chapter 891 of the Laws of 1911; and under section 55 of that statute this committee continues an existing committee with the power and right to make designations.  Section 55 was amended (Laws 1912, c. 4), after the enactment of the statute, by providing that, where there was no such committee for a district in which designations were to be made, "committee designation may be made as shall have been provided by the state committee of the party, by resolution, of which a certified copy shall be filed in the office of the Secretary of State."

A resolution was adopted by the Republican state committee before these designations were made, and a certified copy of the same was duly filed in the office of the Secretary of State, providing that:

"The committees of the party for designation purposes for the spring primary of 1912 shall be constituted as follows: Congressional committees for the Twenty-Fifth, Twenty-Sixth * * * districts, inclusive, * * * the congressional district committee already chosen resident in those districts."

It seems that the existing congressional committee of the Twenty-Sixth district was composed of Joseph M. Dickey, William B. Royce, Frank A. Hotchkiss, George Esselstyn, and Emerson W. Addis, and that a meeting of this committee was called for March 4, 1912, for the purpose of designating candidates, and was attended by Mr. Dickey, the chairman of the committee, in person. Each of the other members of the committee were represented by a proxy duly executed and filed, conferring the power to act. The committee organized and united in the designations which are sought to be nullified in this proceeding.

The learned court at the Special Term has held that the proceedings of the committee are valid, and from the order accordingly entered this appeal is taken.

[1] It is contended that the meetings and the procedure of the party committees assembled to designate persons to be voted for at the primaries are governed by the provisions of section 112 of the statute (chapter 891 of the Laws of 1911). That section is included in an article entitled "Conventions," and its language is limited to such a body.

The term "convention," as used in the statute, is defined to be:

"An assemblage of delegates elected in accordance with the provisions of this chapter representing a political party, duly convened for the purpose of nominating candidates for public office, electing delegates to other conventions, electing officers for party organizations, or for the transaction of any other business relating to the affairs or conduct of the party."

It is plain, I think, that this language has no application to the meeting of a party committee appointed before the statute was enacted.

[2] Nor can the contention that but one member of the regular committee was present at its meeting be given the effect contended for. Section 38 of the statute provides for the adoption of rules and regulations for the conduct of the official primaries. It says that:

"Until the adoption of such rules and regulations, the rules and regulations of the existing committee, so far as consistent with this chapter, shall continue to be the rules and regulations of the party for that political subdivision."

As I have said, it appears that the congressional committee was appointed prior to the enactment of the statute, and it appears that no new committee has yet been elected (consequently no committee has yet come into existence upon whom the duty of adopting rules has devolved); that such committee had continued to act, and would so act until their successors were elected at the primaries to be held March 26, 1912; that such committee had a rule operative and in force at the time of their meeting, by the provisions of which proxies

of its members were valid. The persons acting as such proxies therefore were entitled to vote, and their acts and votes were of the same force and effect in all things as though they were the acts of the duly appointed members of the committee.

It follows, therefore, that the order must be affirmed, without costs. All concur; WOODWARD, J., in separate opinion.

WOODWARD, J. (concurring). There is no question · that the congressional committee for the Twenty-Sixth congressional district was chosen prior to the enactment of chapter 891 of the Laws of 1911. Section 55 of said chapter 891, as amended by chapter 4 of the Laws of 1912, provides that:

"Party committees now existing shall continue until their successors are elected as provided for in this act, and shall have the power to make designations for the spring primaries in the year nineteen hundred and twelve; but if there be no such committee for a district in and for which designation of candidates for public office and party positions for such primary may be made, a committee designation may be made as shall have been provided by the state committee of the party, by resolution, of which a certified copy shall be filed in the office of the Secretary of State."

There is no suggestion that the congressional committee did not exist in the Twenty-Sixth congressional district, and it appears that the Republican state committee likewise designated the then existing committee to act in reference to·the spring primaries, so that there was complete authority in the committee continued in office until the election of its successor under the provisions of the statute. This does not appear to be seriously questioned, but the objection raised is that, with the chairman of the committee present and acting, the other four members were not present in person, but were represented by proxies, and the contention is that these proxies did not constitute the committee, and that the action of the so-called committee was void. The learned court at Special Term has refused to accept this view, and the question presented upon appeal is one of power in the committee of the Twenty-Sixth congressional district, as constituted on the 4th day of March, 1912, to make the designations which such committee, as made up of its individual members, concededly had the right to do.

There is no question that in the long-established usage of the Republican party, both in the Twenty-Sixth district and throughout the state, members of political committees have been in the habit of acting through so-called proxies in the discharge of all of their functions whenever the original members found it inconvenient to be present, and this custom has extended to the power to substitute delegates in the· place of those originally elected, where alternates have not been provided. It is contended, however, that under the provisions of chapter 891 of the Laws of 1911, no provision being made for proxies, it was the intention of the Legislature that, in the performance of the duties of a nominating committee, the congressional or other committee should act only· through its regularly elected members, on the theory that this involves the exercise of personal judgment and discretion, and·that such powers cannot be delegated. This conten-

tion would be entirely sound if we were dealing with the affairs of a public or private corporation; no one would suggest, in the absence of special statutory authority, that a director of a corporation could delegate his powers to a proxy, for the simple reason that, as a director, his acts bind the corporation—he is acting as an agent of the stockholders, and they have intrusted him with the power to determine questions of policy for them, and he cannot delegate this power to some one else, for it does not belong to him to delegate, but to exercise. A "proxy" is defined by Webster to be:

"The agency for another who acts through the agent; authority to act for another, especially to vote in a legislative or corporate capacity."

And this is the only proper use of the word "proxy." It is an agency, and where the proxy is duly constituted, and there is no limitation upon his power, a vote by such proxy binds the owner of the stock or other matter acted upon, to the same extent as if cast by the latter personally. 23 Am. & Eng. Ency. of Law, 298.

But the case is entirely different in dealing with the affairs of a voluntary organization, even though its proceedings are regulated by statute. A party committee, like other committees, is:

"An individual, or a body, to whom others have committed or delegated a particular duty, or who have taken on themselves to perform it, in the expectation of their act being confirmed by the body they profess to represent or act for." 6 Am. & Eng. Ency. of Law, 230.

No one is bound by the act of a committee; it depends for its authority wholly upon the ratification or adoption of the body for which it has acted, and that is exactly what is provided for in the statute here under consideration. The committee makes nominations, not for offices, but for persons to be placed upon the party's primary ballot to be nominated for office. If the party, or any considerable number of its members, is not satisfied with the work of its committee, it has the fullest possible authority to refuse its ratification; it can, through a method pointed out by law, place other persons upon the party ballot, and the members of the party are left entirely free to reject or to ratify the work of the committee. Not even the individual member of the committee, who has named a so-called proxy or substitute, is bound by the action of such proxy; he may himself circulate a petition and place a contesting delegation in nomination and vote for such delegation, so that we have none of the elements of agency in these so-called proxies. Having no elements of agency, but rather those of a committee, there is no consideration of morals or of public policy involved in the position of a so-called proxy in a political committee; he is present as a substitute for one who has no power to bind those who have chosen him to act, and what he does is of no consequence, except as it is accepted and acted upon by those who selected the original committee. Of course, under the new election law, the acts of party committees do insure the printing of tickets with the names of the persons selected by such committees; but this is only incidental, and the persons making up the party have an equal assurance if they elect to reject the work of the committee and to petition for the insertion of other names upon the ballot.

There being no sound legal reason why a member of a political committee might not substitute a person to act for him, and such substitution being recognized and sanctioned by long usage by the very committee which was authorized by the statute to continue in existence for the purpose of performing this particular committee duty, I am clearly of the opinion that the court has not erred in refusing to interfere with the action of the committee in the Twenty-Sixth congressional district. If one member of the committee had a right to make a substitution, then each and every one of the members had such a right, and the four substitutes who acted with the chairman on the occasion of the meeting of the congressional committee had as full power to act, under the law, as any other committee. No member of the committee, as originally constituted, has made any objection, so far as appears from this record; no suggestion is made that the committee was not properly convened, nor that any effort was made to do anything without the full knowledge of the members of the committee, and as no action which the committee, as made up of the substitutes, has taken has been challenged by the committee as a whole, or as individuals, and as no one could be bound by any action which the committee could or did take, except in the mere matter of printing and distribution of the ballots, which was equally open to those who opposed the result, it is difficult to discover what authority this court would have to interfere. The remedy of persons dissatisfied with the action of the committee was not to inquire into the make-up of the committee, acting in due form, but to reject the work of the committee and place a rival ticket in the field. Of course, if there was fraud involved, if the meeting had been contrived to prevent the original members of the committee acting personally, a different question would be presented; but here there is no one urging any such question. It is apparently conceded that all the parties acted in good faith, in harmony with established usage, and that each of the four substitutes was there to do what the principal would have done under the same circumstances. At least, there is no suggestion that the result would have been different if the original members of the committee had been there in person, and the only result of granting the relief sought by the petitioner would be to deprive the voters within the Republican party in the Twenty-Sixth congressional district of an opportunity of determining whether or not they will support the nominees of this committee. I do not think this court would be justified in interfering with the action of the committee. I find nothing in the election law which gives support to a contrary view.